on behalf of Mr. Sanchez. The rule in this case that is applicable is Santabella v. New York, as interpreted under Brown v. Poole, a decision of this circuit that tells us how to apply Santabella, like these. Can we require the defendant to state to us, either now or in the future, that we're in a subsequently filed document within a few days, whether what he wants to do is withdraw his plea, or whether what he wants to do is get an order from us that he's eligible for parole in 20 years? You want something from him, you're saying? Well, we're just wondering when that should be determined, if that's the result of the case. Well, I'd like to address that, because I think the only way to implement Santabella is to give him the option. Let me explain why that's so. Well, let's say that we implement Santabella by giving him the option. Where and when does he have to exercise his option? Presumably, it would be sent back to the trial court and he would have to do that. How could we do that? It's not up from the trial court. The trial court is a State court. It's not coming to us from the State court. We don't have appellate jurisdiction over that. No, but the court can enter whatever order is appropriate to enforce the Constitution. And I would suggest that the court could say the State is hereby ordered to afford Mr. Sanchez an opportunity not to exceed 60 or 90 days in which to tell him whether he wants to withdraw his plea or enforce the agreement. Now, could they give him parole eligibility in 20 years? Can they do it in view of California law? Can we order it? Well, Brown v. Poole suggested that, yes, yes, this Court can. In that court, the State made the same argument, that it's strictly up to the board of prison terms whether to grant parole or not. And in Brown v. Poole, the Court said, well, that may be so, but you made a deal, and that may be a problem for you, but it is not a problem for Brown. If he is not afforded the option, all he may well lose is his option, his plea deal. Because all the State court would have to do is say, the prosecution wants me to consider all the competing considerations, and I am, and in the exercise of my discretion, I'm declaring that the only thing he can do is withdraw his plea. Now, Mr. Sanchez, you're found guilty again if he is re-sentenced under what is clearly current law, and too bad, but you'll probably have to end up doing that 25 years anyway. The real problem is, for me anyway, we don't confer in advance. I don't know about my colleagues. For me, it looks as though the judge gave him kind of an incoherent statement. It was real hard for me to understand, and the best I could do was figuring out, instead of 25 to life, it's 20 to life, but I don't know. But if what he gets to do is withdraw his plea after a few years, trying to find witnesses to convict him is likely to be greatly prejudiced by the delay. And he looks like a really violent, dangerous guy. Well, he did up to then, although my information, most recent information is he has no discipline in prison. Well, maybe there are bigger guys in prison, but he was pretty rough on his girlfriend. I see that. On the other hand, well, we don't know. And what we'd have to do is consider if he goes back into the trial court and is making that decision, he'd have to – there'd have to be some legal research, because my understanding, the law has changed somewhat since then, and there may be more – the law may be more favorable to him under certain circumstances. So it would be something he'd have to do with the advice of counsel, and counsel would probably have to research what the applicable law would be. So I gather what you're saying at this point, you're really not prepared to say, I want specific performance of the deal. I want to withdraw the plea. You want us to remand with instructions to grant the writ, and with the instruction, then send it to the district court to allow him the option of either making – taking the deal or withdrawing his plea. Is that the summary? Yes, it is. Yes. And I'm saying the reason – if the court doesn't do that, then somebody just has the option of saying, I'm not allowing you to enforce the agreement. You have to withdraw your plea. And now the law very clearly is you don't get sentence credits, so you're going to be resentenced to a history of sentence in the get-go under current law. You're not entitled to sentence credits under current law. Do that, Mr. Sanchez. Why wouldn't we under Brown v. Poole have authority just to order specific performance and not to give them an option? I suppose the Court could. Why wouldn't we? I mean, that's what I thought we were – that the issue was in this case, whether it's – I mean, if this were a purely Federal case, we'd specifically perform the contract if we found the contract had been made, and that's the end of the matter. Under – well, the Court's – the Court – the Ninth Circuit says that in these And under State contract law, the person who is not in breach clearly has the option of choosing the remedy, whether to sue for specific performance or sue for damage. So under Federal law, he should have that option, because Federal law looks to State contract law, which says if the non-breaching party has that option. But there's no – there's no option to sue for damages here, so specific performance would be the only remedy, wouldn't it? No, no. Most contracts, it is a – I guess specific performance or rescission. Yes. I thought our considerations were supposed to be shaped by equity. Well, they are. But, I mean, the reason we're here is because the State is saying we're not – we're not honoring our word, and there's some equity there that does not favor the State under those circumstances. Very true, but your fellow doesn't come with clean hands, as it were. In the past, he has had some difficulties, and the Court took that into consideration in deciding whether to – the Court had an option to strike one of his strikes and sentence him as a two-striker, in which case he would have doubled his sentence rather than give him a life sentence. So the Court did take that into consideration in imposing the life sentence. But, you know, there are different equitable considerations on specific performance and rescission. But, I mean, rescission, I think you might have to show that it was a material part of the deal to him and was promised before you were entitled to rescission. Specific performance, you might have less of a standard. You just said, well, this is what the deal is, and we want to enforce. So I guess what I'm suggesting, and I don't know this, just because I hadn't considered it, is that there might be further proceedings in the State Court if you took that option. If he wanted to rescind, the State Court might say, well, no, you've got – you didn't show the reliance on that particular provision. Your plea was knowingly involuntary anyway. Well, that's true, but the Santabello states it and Brown v. Poole in all these cases state it in the terms of the remedy is either to withdraw the plea or to, whether we call it rescission or whether we call it something else, the options are to withdraw the plea or specifically enforce it. I don't think – I don't think this Court needs to get into questions of contract law as far as your whether rescission is an option. Oh, I'm just trying to play this out in terms of it. It's interesting. I suspect you're going to want to come back on something after your adversary is heard in this particular case. Use your time as you wish. Thank you. If there are no further questions, I defer to counsel. May it please the Court. Pam Critchfield for Respondent Worden. Counsel, is there anything to stop us from ordering specific performance so that he is eligible for parole and gets his parole review starting at 20 years instead of 25? We would submit that this Court does not have the jurisdiction to order the Department of Corrections and Rehab in California. So you're conceding that if he prevails, we have to give him the option of withdrawing his plea? No. We wouldn't concede that either. Well, doesn't it have to be one or the other? Well, I think under Brown v. Poole, this Court did order specific performance. That's what I'm asking you. We agree they did. We don't agree that there was the authority to do that. But it appears that this Court decided to order specific performance to the State Court, and they did. I didn't make myself clear. I know that under Brown v. Poole, we can just order specific performance, cite Brown, and goodbye. I don't have a Federal law issue. We don't confer in advance, but at least I don't. What I'm interested in from you is actually suppose we order it. Does anything actually happen? Or did the California authorities say, well, we don't care what the Federal Court's doing or saying. We're just not eligible. We just don't hold parole reviews for another five years. I'm assuming that the CDC and or the State courts, when they are delivered of an order by the United States Court of Appeals for the Ninth Circuit, follow it. I don't know what happened in the Brown v. Poole case and the other cases where. So you don't really know? I don't know. I'm assuming it's followed. Well, I gather what you're saying, though, is just for my own clarification. You think Brown was incorrectly decided in terms of the power of the Federal courts, but here we are. We're bound by that, and that's our operating thing. You didn't want to concede that argument to begin with. Correct. But under Brown, we would seem to have that authority. Correct. And it's, in this case, it isn't, I mean, I think we all understand this, but we're talking about a parole eligibility hearing, not an early release date or a release date of 20 years. We're talking about an eligibility hearing at 80 percent of the time or 20 years rather than 25. Of course, my argument, I'm not going to concede that that's a term of this was induced to plead by that term. We don't know that. A statement possible. I think at the time, I think it's clear that at the time, the law was, it was not clear whether third strikers were having to serve 80 percent or 100 percent of their sentences. And a few years later, the California Supreme Court came out with a case and clarified that. There was some misunderstanding. And so the statement that was made on the record in this case was made as a result of that. I believe. So what you're saying is the judge really thought he'd be eligible for parole in 20, and that's what he's telling them. Right. And I think the district attorney and the defense attorney also thought so. Everybody. Everybody thought so. And I think it's happened in other cases as well. So what do you do with those cases? Well, it's, we argue what I argue, what we argued in the brief, that parole eligibility is a collateral consequence, that you have no, you don't have a right to be informed of it under U.S. Supreme Court authority, Hill versus Lockhart. So it doesn't affect your release date. It affects the, it might affect your release date. But we argue that it's collateral and that there is no difference or there's no difference between a kind of a misstatement and not being informed of it at all. And I think Hill versus. What's the best authority for that? There is no authority. Excuse me. There is no authority cited that says this type of a misstatement is any different than not being informed at all. Well, wait. I mean, what's the best authority for your side of the proposition? Hill versus Lockhart. Hill versus Lockhart. If you read Hill, the judge actually, the trial judge in that case actually told the defendant that he would serve one-third of his term before parole eligibility on the record. The claim in that case was ineffective assistance of counsel because counsel had told the defendant that he would serve only one-third. Turned out defendant had to serve one-half of his time before he was eligible for parole. And the court did not directly address the misstatement by the trial court, except to say parole eligibility is a collateral consequence. The court did find no prejudice in that case from the misstatement by counsel. And I think that, excuse me. Let's see. In Hill, I think the State didn't tell him one way or the other when he was eligible for parole, and he says my plea is no good because I wasn't told when I'd be eligible. Is that right? No. In Hill, he was told. He was misadvised? He was misadvised in Hill, although the language of the court when they addressed that portion said you didn't raise this. Petitioner didn't raise this claim. But even if it says as if I don't have the case in front of me, but it's parole eligibility is a collateral consequence, and we don't find that, that's not a constitutional violation. In the ultimately in Hill, they found no prejudice on his ineffective assistance claim. In the languages, defendant alleged no special circumstances here that might support the conclusion that he placed particular emphasis on his parole eligibility in deciding whether or not to plead guilty. So there's no prejudice. So they didn't directly address the misstatement by the trial court, but clearly there was a misstatement by the trial court, as there was by the defense counsel, which was what the claim was. If there's no further questions, I would submit it. Thank you, counsel. I don't have the Hill case in front of me. But as I recall, the holding in Hill was that a defendant seeking to vacate his plea under those particular circumstances had to show certain things, and Hill had not alleged them. So it was really a question of has he shown prejudice. In Hill, do you recall, it sounds like my recollection scrambled, whether he was misadvised or not advised or whether he was misadvised, but his point was that he was not advised or what? All I recall about it, the answer is, the bottom line is I don't know for sure. I just recall him saying my counsel gave me the wrong advice, if I recall correctly. My counsel is different from the court. It is. And whether or not that was a part of the agreement with the prosecution is a different question, too. Under California law, we cited Monogold, for example, which establishes that a defendant does have a liberty interest in a parole eligibility date. Just thinking in recollection today, I think there are one or two Ninth Circuit cases that say the same thing, that a defendant does have a liberty interest in the parole eligibility date. Those are the questions. Thank you, counsel. Sanchez v. Lamarck is submitted.
judges: Thompson, Kleinfeld, Thomas